Good morning. We're here on a comeback case. Well, not exactly a comeback case. A new case. Morris v. U.S. District Court. And we are ready for arguments whenever counsel are ready. Good morning, judges. Marianne Bokers on behalf of the petitioner, Bruce Wayne Morris. My co-counsel, Tony Cambrello, as well. This court can decide. The Mooney, Bowie, Mesherosh can claim in this court, in this proceeding. How is that possible without a record, without an amendment to the petition and so forth? Speaking only for myself at this point, it seems to me that everything has gotten procedurally a lot more complicated than it needs to be. Normally when there's newly discovered evidence, one asks the district court for permission to amend. And it's either granted or it's not. And the hearing on the existing issues goes forward and there's an appeal or there's not. And why isn't that the right way to just deal with this problem at this point? Well, Your Honor, because this court was, this court remanded the case to the district court for hearing only on ineffective assistance of counsel. The only way that there's But new things happen. So why can't there be an amendment sought to deal with new things happening? Well, Your Honor, in order to expand the evidentiary hearing, that would have been beyond the authority of Magistrate Hollows to do. You only sent this case back for a hearing on ineffective assistance of counsel. But I guess I don't see why that's inconsistent with the court's exercise of its ordinary authority to deal with new things. Well, Your Honor, Magistrate Hollows indicated that he was uncertain whether he would be able to expand the order to include these new claims. Okay. Well, what if we were to tell him that if he's presented with a proposed amendment, then he gets to rule on it in the normal course? Why wouldn't that still be the best solution? Why should we try to decide something that has not an evidentiary record? Because you don't need an evidentiary record in this Court, Your Honor. And the cases that tell us that are Bowie and Mesherosh. What Bowie and Mesherosh tell us is that when there is a showing, and we have undisputed facts here, that the prosecutor, Deputy Attorney General Robert Marshall, wrote a memorandum in 1987 when Petitioner's trial was ongoing that Yvette Barrett perjured herself at his trial. These facts are undisputed. Well, let me ask you this. Yes, sir. I'm trying to figure out what exactly it is you want us to do now pursuant to your petition for mandamus. I understand the two pieces of evidence that are recently discovered. One of them is the memorandum that mentions the word perjury, and the other one is the cover letter from Yvette's mother. I mean, we've read the record that you presented to us. Maybe record is the wrong word. But what are you asking us to do with this? Well, because the Court has decided to entertain proceedings on the petition for writ of mandamus. Well, we've only, we're asking for argument on writ of mandamus. So what do you want us to do as a result of your petition? I would like this Court to recall the mandate and decide the issues that are now pending before this Court, which include the new claims. To order. Now, has the complaint, has the petition for habeas corpus been amended to include these claims? Well, this Court can consider those claims in the first instance. Can I, no, please answer the question first. Has the petition for habeas corpus been amended to include those claims? No. But I believe that this Court is permitted to consider those claims on its own. And I can move this Court to amend the proceedings, to amend the petition as well. Now, there's a problem with, I'll call it the record, I guess. I mean, we have these two documents, but we don't have anything on the record from the State to put them in context. We've got some things in the briefs. We've got some other. I mean, I don't think we're very well suited to evaluate this information at this stage of the game. Well, Your Honor, what Bowie and Mesherosh tell us is that there is no necessity for an evidentiary hearing when there is a showing that the State has failed to bring to trial court's attention or to any of the other courts' attention who have heard this case that Evette Barrett committed perjury. It was their duty to tell the trial court at the moment that that memorandum was drafted. But we don't even know what it means. Perjury about what? I guess it seems to me this just cries out for the kind of factual development that can occur only at a district court level. And it seems to me that all the parties in this case have strived mightily to avoid just having a hearing on whatever the issues are that require a hearing. It's a ---- But what Mesherosh and Bowie tell us, Judge Graber, is that, in fact, the Attorney General is not entitled to an evidentiary hearing to try and explain away its misconduct. Both Bowie and Mesherosh talk about the fact that the error, the misconduct that occurred here, was the failure of the Attorney General to go to the trial court and bring this to the trial judge's attention, that belated explanations for this behavior are insufficient. The error that requires reversal and the vacation of Mr. Morris' convictions is the fact that they didn't do anything at that time and that, in fact, they haven't done anything. They have failed and continue to fail to disclose this to every other court which has heard this case. It's not they don't they aren't entitled to try and explain away the fact that perjury was committed. It's the fact that they wrote this down, they knew it existed, and that they had to tell. It's someone's opinion. We don't know. I mean, as far as I can tell from reading this, we don't know whether it was their incorrect opinion that perjury was committed. I mean, someone can be wrong about that, and or what it's about. I guess I just, it seems quite premature to me for us to make a decision on the merits of anything. The facts are undisputed, Your Honor, and what the, what Granberry v. Greer, Frisbee v. Collins, and Heberts v. Zena, and out of this circuit, tell us is that where there is an unusual case of particular urgency, this Court can take up unexhausted issues and resolve them. And there is no case that I can imagine of more unusual circumstances and particular urgency than that with which you are confronted in this case. Mr. Marsh wrote down, it speaks for itself, perjury is the only synonym for perjury. Let me, let me read to you from the document. It's a very interesting document, and if I were in your position, I would be pleased to have received it, because I think it makes your case a little easier. But here's, here's what it says, in, I think, full relevant part. Last action taken. Defendant perjured herself at trial. Prelim set for 624.87 was postponed until court transcripts were received to determine exactly what defendant said. Future action, colon, pre-prelim 722.87 for determination of Barrett's perjury. Well, these are internal notations, and it says for determination of her perjury, and it says exactly what she said, along with the sentence, defendant perjured herself at trial. There's tension even within the document as to what went on and what's being recorded. But, Judge Fletcher, what the law tells us, too, under Bowie and Mesherosh, is that even if they suspected perjury had been committed, they had an independent duty to tell the trial judge who was hearing this man. That's a different question from what you're trying to advance here, at least. I think you're trying to tell us, or at least you were a moment ago, that perjury was committed. And I'm looking at this document, and I say, well, maybe. Well, it's maybe or maybe or whether perjury may have been committed, if they were considering that, or whether perjury was committed. Under Mesherosh, Bowie, and Mooney, this can't be the attorney general if he had a duty to go to the trial court. That's what the cases say. But much as we are accused of doing it, and much as I would occasionally like to do it, we are not original fact-finders here. But the cases say that there does not need to be a fact-finding proceeding in this situation. In fact, the cases say that a fact-finding proceeding is disapproved because due to the failure of the prosecutor to go to the judge in the first instance and disclose that. And in fact, this Court has been sitting on this case since, what, 1997? Was that the first time we were up here? And the attorney general has neglected and failed to disclose this document throughout all these proceedings. So the unreliability and the fundamental unfairness of this document existing in this case, particularly when my client was volunteering to be executed, has infected all of these proceedings and rendered them unreliable. This is a matter of – which should be of great concern to this Court. And I absolutely believe that you're in the position, and you have the authority under the cases that I have cited in the briefing, to take this up as a matter of first instance, that there need not and, in fact, there should not legally be an evidentiary proceeding in which they try to explain this way. In fact, Deputy Attorney General Marshall told us in his declaration he doesn't remember anything about this at all. He doesn't remember anything about this proceeding. He said, I remember I drafted this memo and I know nothing else about it. The remaining parts of his declaration are purely speculative and are an after-the-fact justification for the misconduct which was committed when this memo was originally drafted and when he should have originally gone back to the trial court and told Judge Giffen that there was a potential problem or perhaps a fundamental problem with the testimony of that Barrett in this case. Counsel, the problem that I have, I think, is can you hold an evidentiary hearing on a matter which is not now an issue? In other words, there's no pleading before the court, the district court, concerning the two items that you now wish to bring up before us. Is that correct? No, I did not move to You haven't amended your petition yet. That's correct. If you haven't amended your petition to include these two items, how can you expect anybody to hold a hearing, either in the district court or before us, as to the merits of those claims? But the court can, if I can move this Court to, under, I believe under Rule 15, to entertain these claims, and exhaustion can be, exhaustion should and can be excused under the cases that I provided to this Court, those being Granberry, Frisbee, and Hendricks v. Zenon. Therefore, I do believe this Court has the authority, power, and in fact, the requirement to rule on these issues and decide them. There should not be a remand. You know, there's a basic problem, I think, that you have in understanding the posture of your case. You said that we have the power under Rule 15. There are two sets of procedural rules. One is the Federal Rules of Civil Procedure, and your reference to Rule 15 is part of that. There are also the Federal Rules of Appellate Procedure that govern us. We can't do something under Rule 15. We can assess the correctness of something the district judge might or might not have done under Rule 15, but I don't think we have the power to do something under that rule. Am I missing something? I understand your position, Your Honor, but I still believe that these cases allow you to reach the issue. And unless the Court has a further question, I'd like to reserve the remainder of my time for rebuttal. You may do that. Thank you, Your Honor. I'll hear from Mr. Campbell. May it please the Court, Ward-Campbell, for the real party in interest. From understanding the tenor of the Court's questions and concerns, I'd say it's correct that the Petitioner here has jumped the gun in coming to this Court at this point with this claim. The magistrate, even below, had indicated that when they first made their motion to expand the evidentiary hearing regarding their claim of innocence, that he was willing to take that matter under submission and wait for the development of information and facts at the evidentiary hearing, and then make the appropriate findings that he thought were necessitated by what was presented. How could that be a proper procedure for the reasons that Judge Ferguson was mentioning earlier? In the absence of an amendment to the petition, what relevance would that evidence have? I mean, it seems to me that it's gotten much more confused than it needs to be. It seems like the right procedure would be amend the petition to state newly if the Court refuses to entertain the amendment, and then take whatever appeal may be appropriate. It just strikes me that, as I said to opposing counsel, every party involved in this case has seemed to want to avoid just getting on with the business of having a hearing on all the appropriate issues. You know, Your Honor, actually, I have to really take issue with that, to the extent that you've indicated that we have tried to avoid evidentiary hearings here. In fact, today would be the third day of the evidentiary hearing that was scheduled in this case. Well, I'm thinking of the long scope, and I don't really – we don't need to get into what's happened in the past, because we're here now, but what's wrong, in your view, with what I've said about what the appropriate procedure would be to deal with these claims? We have no quarrel with that, and we answer the Court's question that, obviously, they can certainly – they need to move – they can move to amend. It would be a matter of the district court's discretion in the interest of justice. There would be an additional complication because – Is it a matter solely of discretion? Well – There may be a right to amend. Well, the – Where it doesn't have that discretion. Once – you have a right to amend once. This is already an amended petition. A responsive pleading has been filed in this case. So the statute would allow an additional amendment – Newly discovered evidence? If – You can't bring in newly discovered evidence that was held to you because you amended your petition once? A district court may find an amendment to be in the interest of justice in that consideration, but I'm not aware of an absolute right to amend in that type of situation. It would have to be based on the district court's evaluation of the significance of that evidence. But wouldn't it be an abuse of discretion, whereas here the evidence was newly discovered only because it wasn't timely disclosed? I think that would have to depend on what may have to be developed in the district court below regarding the facts and circumstances leading to this disclosure. Well, the disclosure was made very recently of files that have existed for a long time, and that at least seems undisputed. So if the disclosure had been made at the time of the entries of the records, then there wouldn't be a need to bring this motion now. So I don't understand what else has to happen to know that these were very late disclosures. Well, Your Honor, I think partly I think there are legitimate questions to be raised still about what happened actually back in 1985 and 1987 in regards to how the open files policy of the prosecution was handled in this matter regarding discovery. And also I think there's a – What's that mean? I don't understand what you mean. Well, at the time in 1985 or 1986 to be more exact, the record indicates very early in this trial that there was in fact that the district attorney arranged a meeting to allow the defense to go through the entire prosecution file in this case. And I have no information that meeting never occurred, that all these documents at one point or another would have been made available. But of course under Brady, there's an independent obligation for the prosecutor to supply them, not just to come on over to my office and have a look. You have an obligation or your predecessor had an obligation if it was Brady material, correct? That's absolutely correct. So it's not an excuse for you to say, well, we invited them to come over and have a look if in fact you had an independent obligation to hand it over without request. Now, I understand you may dispute as to whether or not this is Brady material. But if it is, you had an independent obligation to hand it over. Well, thank you for anticipating me because I think that is part of the dispute, where this was in fact even subject to that requirement. But assuming it is, the fact that there was a meeting that didn't take place is irrelevant. Well, if in fact the representation was made that you were getting everything that we have because we have an open file and that was relied upon, that might raise a question. If in fact what the arrangement was. I think you don't take my point. If it is Brady material, the prosecutor has an obligation to turn it over. It is not enough to say we have an open file proceeding. Your Honor, you're right. I agree with you on that point. But what I want to say is that to the extent that there may be some issues about why disclosure was or wasn't made and whether or not it was Brady material and stuff, I'm concerned that's going to be very interrelated. And it may affect ultimately what a judge may decide about whether or not to amend this petition. And the problem is beyond that. Once you amend it, it's an unexhausted claim. And there are problems with dealing with motions to amend when you're dealing with claims that are technically unexhausted. There is case law, isn't there, that says that if the failure to exhaust is the fault of the government, then exhaustion is excused. Do you agree that there is such authority? I understand you don't agree that it applies, but there is such authority, correct? I'm always dealing at two levels with this issue. And, yes, if ultimately, if there was, in fact, ultimately a conclusion that we failed to disclose Brady material, that would be cause for relief. And so if the district court were to conclude that, then a hearing would have to go forward on the merits of the claims, correct? The new claims, the old claims also. But if the petitioner seeks to amend based on newly discovered material that is Brady material that should have been disclosed a long time ago and it wasn't, then where would be the barrier to going forward on the merits of that hearing? Do you understand the question? I am. I'm mulling over. I want to give you a very precise answer. The exceptions to exhaustion ordinarily would be if we were to waive it or if there would be a failure to be any available corrective remedy in the state court. The types of ordinarily even a legitimate or discovered constitutional claim I don't think would necessarily be. It may be that if there was a failure to disclose Brady material, that may be cause later for any kind of procedural default that might be raised in the state court upon return. But I don't think it would necessarily excuse exhaustion of that claim. Even if the evidence was developed in federal court, it is not unusual or extraordinary to go back to state court to exhaust. So I don't think you would have a way. I don't think that would necessarily excuse the exhaustion requirement. Counsel, in your brief, you bring up a matter which to me seems somewhat newly discovered facts. You state in your brief that the three participants in this murder are equally guilty of murder. Now, the key word is equal. No deviation between the complicity of all of the all of the parties. And that's what that's what they're trying to seek out through this through this newly discovered evidence. Well, that's a reference. Let me let me finish. Oh, excuse me. I mean, I didn't ask you a question yet. But the state court, the state Supreme Court, this matter was raised before him. And they shrugged it off by by two sentences. This is punishment is immaterial. Now we have a situation in which all three of the participants are admitted by the state of California Attorney General that all three are equally guilty of murder. One person is sentenced to death. One person is put in jail for three years for car theft, and the other person has all charges dismissed. Now, the federal rule is a lot different than what the Supreme Court has stated. The California Supreme Court has stated in the federal rule is there is an equal protection clause. And if the discrepancy in sentencing or the discrepancy in even the the prosecutor bringing the charge. Is different by reason of equal protection clause, then there's a remedy. Now you can answer. Well, Your Honor, I think, as I understand the reference that you're making is to the to the letter that the the mother of the two women who are involved. I'm not making that any references at all. I mean, I'm making a reference to your statement. These parties, these three people are equally guilty of murder equally. They were equal, in fact, and equal in law. Well, Your Honor, they were all they were all under California law. Culpable for the felony murder of Ricky Van Zandt, which is why accomplice instructions, in fact, were given in this case. But in your handling of the case, you treated the culpable to be differently. And and under under federal law, a Ninth Circuit law, if you if you if you charge, even if you charge, there's no trial. An equal protection matter. Then it's it's it's it's dismissed. What? And you knew you knew that that that second woman, that that older older sister, was was so was so mean that she even threatened to kill her mother. And yet you give her three years for car theft. Your Honor, what you're referring to is the fact that the district attorney made testimonial agreements with both women in return for their testimony against Mr. Morris and that they received reduced charges or no charges at all in return for their testimony and for fulfillment of other obligations, other conditions in that agreement, which is not unusual and not unconstitutional. And that was fully disclosed during the trial of Mr. Morris about what what the treatment was of those two women. And so anything about the disparity or or whatever between how those women were treated as opposed to Mr. Morris was fully conveyed and explained at the time of the trial. But they were all principals because they were accomplices, either as in the felony murder of Mr. Van Zandt. Why did you why did you want to kill somebody, execute somebody? And on the other hand, give somebody who even threatened to kill her mother only three years for car theft? What possessed the the the your office or the prosecutor to do that? Your Honor, our office took over the the prosecution of people versus Yvette Barrett after she had reached an agreement with the previous district attorney of Sierra County. And at that point, the way the agreement read, assuming she filled the conditions we were or didn't fulfill the conditions, we're under no obligation to give her the reduced reduced charges. Who wanted her testimony? Be honest. Isn't that right? The special prosecutor called her as a witness. Yes, at the early very early on in this case, the district attorney of Sierra County made an agreement with both women to testify against Mr. Morris. And you wanted her testimony in violation of the Equal Amendment, the Equal Protection Clause. Well, Your Honor, there's nothing unconstitutional about an agreement with a witness for reduced charges in return for testimony against an accomplice. Counsel, let me ask you a question similar to the one that Judge Fletcher asked opposing counsel, and that is, if you could write the tagline of our opinion in the present matter, what do you think that we ought to do? I think the appropriate thing to do, given what the magistrate below us is to remand it for purposes of them to move to amend the petition and allow the district court to proceed accordingly. They think they have a new claim with the move to amend the petition. Do you construe our earlier orders in this case as foreclosing that? Your Honor, we brought the fact is up until the. I understand we can amend now, but I'm trying to figure out what you thought was before the district court or in front of US parties prior to coming here right now. As we understood it, this case was the mandate. This case was sent back for evidentiary hearing on two issues, ineffective assistance of counsel and competency. They've abandoned the competency claim. So at this point, the only issue that had been remanded back was for ineffective assistance of counsel and the summary judgment that was granted on all the other issues was otherwise affirmed. Well, counsel, this claim was not part of that petition that was in front of the court. So this is, in fact, a new claim. Everybody agrees it's a new claim. So the previous order wouldn't have covered it. OK, but I'm asking you a slight variant on the question that you just answered, and I think it's not your fault that you didn't answer. I don't want to make it clear if. The petitioner had sought to amend the complaint in the district court based on this new evidence on these two documents that recently showed up. Would you have opposed the amendment on the ground that it was not within the scope of the remand order? I could not have opposed it on that basis, because this was simply never an issue that was before this Court had never been part of the remand. Discussions have come up about expanding the evidentiary hearing in this case, but not – and that's where the discussions have been about what the mandate was, because it related to other issues that we thought this Court had already disposed of. And maybe that's caused some questions. And that's where there have been questions below about how far the Court can go in going outside the claims that were remanded. But this is a totally new claim. It would have been outside your mandate, so we would have to simply deal with it as another amendment to the petition that was pending in front of the Court. I see. So you would not have objected to an attempted amendment of the petition based upon the scope of our prior remand. You might have objected, saying you can't amend now, but it would have been a Rule 15 argument? That's correct. OK. That would be correct, Your Honor. And it would seem to me that based – I'm just sort of thinking aloud here, but your earlier argument was that prior counsel for the petitioner had access to this material, even if you had a separate Brady obligation to hand it over affirmatively and separately. So in a sense, that would fold back into the ineffective assistance of counsel claim. Because what you're saying is they should have – previous counsel should have found it. It hasn't been raised that way. You know, this has come up before in prior discovery motions have been raised in this Court in which they wanted to get full access again to the prosecution files and all that, and that's all been part of their ongoing attempt to get information relating, I suppose, to IEC claims or potential Brady claims. And it's possible that as things shake out, that there may be an ineffective assistance counsel element here that we – because of the fact that the record would indicate that access was given to counsel for these files, regardless of whether there was a Brady issue involved. Counsel, the law everywhere in the United States says that death is different. And should we permit the execution of somebody merely because of some minor procedural problem? Well – or shouldn't we really carefully consider every single aspect of mitigating evidence? Because the cornerstone of the approval of the death penalty in the U.S. is dependent upon mitigating evidence. And without the right of mitigating evidence, the death penalty would have been abolished a long time ago. So why shouldn't we be concerned as deeply as we can possibly be concerned about the right to introduce mitigating evidence? Whether you think it's mitigating or whether you don't think it's mitigating, it's immaterial. It's whether or not the defendant thinks it's any and all mitigating evidence. And there's no definition whatsoever in any Supreme Court case that says what mitigating evidence is, except what the defendant believes it is. Well, if – Your Honor, if we were having the trial right now, and this is information that Mr. Morris wanted to try to introduce, there may or may not have been legitimate objections at the time. But in retrospect, we have to make a judgment as to whether or not this type of evidence, in fact, would have had any material impact on the trial. And that's not an unlimited carte blanche that any time you find mitigation, you automatically are going to be entitled to relief. There still needs to be an assessment of materiality. Well, then it becomes incompetency of counsel, then. It may roll into that. The materiality issue underlies either a Brady claim or the ineffective assistance of counsel claim. There's always a tension between those claims because they both have the same materiality standard. And what we're really talking about here for these – for these – for these alleged new claims will be, in fact, materiality. At what point did you become aware of the existence of these two documents? I was not aware of the existence of the letter from Michelle Roberts until we actually had a chance to respond to the discovery motion. I may have seen the letter earlier in the year when we were going through it, but frankly, the letter was of no significance to me. When we got the specific order about turning over everything regarding the event in Allison, it became part of the – of the entire package of information we delivered. Even when I delivered it, frankly, the letter had no significance to me. The notation in the file I saw in 1996 when I first looked at this file. And I'll be honest, when you first see that word perjury, that's a pretty loaded word. And I saw it. And I read the rest of the record. I read it in context. I read what Ms. Barrett told her probation officer about what she was concerned about. I was familiar with the – I can see my time is nearly up. Thank you. And concluded that exactly as Mr. Marshall has indicated, that this was, in fact, part of the inquiry that our office made to determine whether or not she should receive the benefit of her deal based on the kind of testimony she gave at that trial. And ultimately, it was decided to go ahead and give her the benefit of that deal. But it was not because that there was any undisclosed falsity or undisclosed perjury in her testimony. But it had to go with the nature of her testimony itself, which, in fact, as everybody admitted at the time of trial, had some problematic issues with it. Prosecution admitted it. Ms. Barrett literally changed her testimony at times during the trial. There's no doubt that she had problems with complete and truthful testimony. And then we had to decide whether or not we would maintain our obligation, whether or not to give her the benefit of the agreement. And ultimately, that decision was made to go ahead and do so. And unless there's any other questions, I will submit it. Thank you, counsel. You have some rebuttal time remaining. First of all, I'd just like to read a short – You pulled that microphone down, so thank you. Thank you, Judge. I'd like to read a short passage from the Bowie case, and then I have some suggestions for where the Court should go with this matter. The Attorney General argues that without actual proof of perjury in the record as it now stands, it is premature to order a new trial. The Attorney General asks us to remand the matter to the trial court for a full evidentiary hearing to determine whether any of the witnesses actually lied, as suggested by the letter. As support for this position, the Attorney General notes that in the controlling cases, the record justified the conclusion that perjury did in fact infect the trial and result in a denial of due process. The Attorney General's argument misses the mark. First, we cannot help but note the irony in an argument that asks, years after a trial, for an opportunity to do what the Constitution required of the proponent of the argument before the trial began to ensure that it would be fair. It is the Attorney General who is directly responsible for what he now says is unclear from the record and for the deficiencies in the trial that took place. Given the manifest reason to question the veracity of the prosecution's witnesses, the Constitution required a prompt pretrial investigation of the integrity of the government's evidence before the witnesses were called to the stand. This requirement is not satisfied by a tardy evidentiary hearing after the fact. Although the prosecution had leveraged before trial to get the truth with its witnesses, it is not unlikely now that the Fifth Amendment will shield them from the inquiry the prosecution wishes to launch. By committing the witnesses under oath to a certain story, an admission now of untruthfulness might well unveil a crime. That's the Bowie case, 243 F. 3rd at 1123. Now, Judge Fletcher, in response to your inquiry about the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure, one way to solve this problem would be to remand it to the district court, order that the petition be amended with the new claims, and then order that the case be recalled to the Ninth Circuit. And it can be resolved here, I believe, based on the facts that are now in front of the court. That would be the easy way, and the ways that I believe it's called for, based on the unusual facts and circumstances of this case. If the court is unwilling to do that, I ask that the court enter a very specific and explicit order concerning how the remand would be conducted before the district court. First of all, I ask that the case be assigned to a new magistrate for the reasons that I have articulated in the papers previously filed. Secondly, I ask that discovery and investigation be permitted. And this would include the depositions of all of the attorneys general who were involved in handling this case from the time the case was initiated in 1985, because we know that the attorney general's office was, in fact, involved long before they became the special prosecutor of Abbott Barrett. Excuse me one moment. We ask that the court – Can I make a suggestion? Yes, Your Honor. You know, this case has been going on about for 16 years or so. It's been in the district in federal – I'm now 83. 1992, same year. And I don't live long enough when it comes back. I hope you do, Judge. It doesn't do anybody any good – Pardon me? To have it continue for so long. We have a very, very expert mediation officer in this court. And I would suggest to you, to both sides, that you talk to him about the possibility of mediation and settlement of this case. I would be more than happy to have that discussion, Your Honor. But you would have to – I think the attorney general's office would have to be ordered to do that. So on Petitioner's behalf, I'm more than willing to entertain any discussions about meaningful mediation in this case. But the easy way to do it is send it back and order the amendment, and you can bring it right back. But somehow I get the feeling that's not what's going to happen here. In any event, if the court – if the court is going to remand, I ask that these orders be entered to permit the petition to be amended with the finding that exhaustion is not necessary based on the special circumstances articulated in Granberry v. Greer, Frisbee, and Hendricks v. Zeno, permit time for investigation and discovery so that we may appropriately prepare for the evidentiary hearing. But I would like to make – just remind this Court once more that the failure of the attorney general to disclose the marshal memo is a matter of grievous concern, not only to me, to my client, it should be to this Court, and it should be to society in general. Once a prosecutor determines that there might be perjury in a case, it is incumbent upon him to tell the court. It became a matter for the court to be concerned with, not just the attorney general's office. It – the fact that perjury had occurred is simply something that you're sliding back and forth between might have been perjury and perjury did occur. Yes. I just heard you say that the prosecutor has an obligation to alert the court that perjury might have occurred. Well, I'm not sure the obligation always extends that far. If I'm a prosecutor and I think that it might have occurred, I think I might have an obligation to investigate to determine whether it has, and then based on my best judgment, if I think it has, I have an obligation. But if it's merely a might, I'm not sure the obligation is yet triggered. Well, what's different in this case, Your Honor, is that we have a memo where a prosecutor wrote down that perjury was committed. I – yes, we've read the memo. All right. That's all I have for the court. Thank you very much. Thank you, counsel. The case just argued is submitted, and we will stand adjourned. What does the State say about mediation? Excuse me, Your Honor, I didn't quite hear you. I said, what does the State say about the suggestion of mediation? Your Honor, I'm not too sure we're still on the record exactly what issue you're asking me. Do you want to think about it for a while? Well, Your Honor, there's no penalty right now in the books in this case. We're talking strictly about guilt or not. I'm not too sure exactly what issue we need mediation. Okay. Well, there is to be a new penalty phase trial, I presume, at some point if the guilt phase claims don't succeed. So perhaps that's where… There may – you know, that's – obviously, since this case is still pending, I'm not aware of any final decisions made about what Sierra County may choose or not choose to do about the penalty. Obviously, what they may do or not do is going to be affected by what ultimately happens in the proceedings that are pending now. But I'm unsure in the context of this case what a mediation would accomplish. You want to put us to work, in other words. Excuse me? You want to put us to work. You don't want to settle it. Your Honor, I am not sure in the context how exactly you settle a case in which a jury has already convicted the man. And we don't believe that there's really anything to add to what's already been presented to that jury. So as a matter of principle or concept, at the moment, I don't see what mediation would accomplish in this case. But I appreciate the court's suggestion. Possibly a life sentence. And I mean, that's – I suppose we're in the room to… You may have to ask their client if he will accept a life sentence. Well, we're not in the business of mediation. That's – there's a tension there, I believe, as well, Your Honor. We're not going to try to mediate it ourselves. You ask those questions in mediation. You don't ask them here in the courtroom. Your Honor, the last time… The kind of question that you have mediation purposes, settlement purposes. I give here and you give there, and I take here and you take there. You settle it. Well, if there's any kind of proposal, obviously, we'll respond to it, Your Honor. Thank you. Thank you. As I said, the case has been submitted for decision, and you will get a decision from us. Thank you. All rise.
judges: Ferguson, Graber, W. Fletcher